*By order of the Bankruptcy Appellate Panel, the precedential effect
of this decision is limited to the case and parties pursuant to 6th
Cir. BAP LBR 8013-1(b). See also 6th Cir. BAP LBR 8010-1(c).*

File Name: 06b0016n.06

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

In re: RANDALL J. HAKE AND
      MARY ANN HAKE,         )
                                 )
           Debtors.         )     No. 06-8014
                                 )

F. DEAN ARMSTRONG,         )
                                 )
           Appellant.      )

Appeal from the United States Bankruptcy Court
for the Northern District of Ohio, Eastern Division at Youngstown.
No. 04-41352.

Submitted: August 23, 2006

Decided and Filed: October 3, 2006

Before: GREGG, LATTA, and SCOTT, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ON BRIEF:** F. Dean Armstrong, ARMSTRONG LAW FIRM, Flossmoor, Illinois, Victor O.
Buente, Jr., Newton Falls, Ohio, for Appellant.

---

**OPINION**

---

JAMES D. GREGG, Bankruptcy Appellate Panel Judge. F. Dean Armstrong, Esq. ("Appellant") appeals an order of the bankruptcy court finding him in contempt of court and imposing a monetary sanction of $312.50. For the reasons that follow, the bankruptcy court's order is REVERSED.

## I. ISSUE ON APPEAL

The issue raised by this appeal is whether the bankruptcy court erred in holding the Appellant in contempt for participating in a hearing before it while his law license had been temporarily suspended because he failed to pay an annual registration fee.

## II. JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for the Northern District of Ohio has authorized appeals to the Panel and a final order of the bankruptcy court may be appealed as of right pursuant to 28 U.S.C. § 158(a)(1). For purposes of appeal, a final order "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citations omitted). The bankruptcy court's order holding the Appellant in contempt and imposing a fine is a final appealable order. *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1145 (9th Cir. 1983). "A decision on a contempt petition is within the sound discretion of the trial court and thus is reviewed only for an abuse of discretion." *Elec. Workers Pension Trust Fund of Local Union #58, IBEW v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 378 (6th Cir. 2003) (citing *Peppers v. Barry*, 873 F.2d 967, 968 (6th Cir. 1989)); *accord, United States v. Grable*, 98 F.3d 251, 253 (6th Cir. 1996).

"An abuse of discretion is defined as a 'definite and firm conviction that the [court below] committed a clear error of judgment.' The question is not how the reviewing court would have ruled, but rather whether a reasonable person could agree with the bankruptcy court's decision; if

reasonable persons could differ as to the issue, then there is no abuse of discretion." *Mayor & City Council v. W. Va. (In re Eagle-Picher Indus., Inc.)*, 285 F.3d 522, 529 (6th Cir. 2002). The bankruptcy court's decision, under this standard, will only be disturbed if it "relied upon clearly erroneous findings of fact, improperly applied the governing law, or used an erroneous legal standard." *Gary's Elec. Serv. Co.*, 340 F.3d at 378 (citing *Blue Cross & Blue Shield Mut. v. Blue Cross & Blue Shield Ass'n*, 110 F.3d 318, 322 (6th Cir. 1997)).

## III. FACTS

The Appellant is an attorney who represents Buckeye Retirement Co., L.L.C. ("Buckeye"), a creditor in the chapter 11 bankruptcy case of Randall J. Hake and Mary Ann Hake. On November 2, 2005, Appellant filed his Motion for Admission of F. Dean Armstrong Pro Hac Vice and Notice ("Motion") and supporting affidavit. The Motion and affidavit asserted that the Appellant was a member in good standing of the bar of the State of Illinois, and that there had been no disciplinary proceedings, or criminal charges instituted against him. The bankruptcy court granted the Motion on November 16, 2005.

On February 9, 2006, the Appellant appeared before the bankruptcy court at a contested hearing during which he examined witnesses and made arguments to the court. Subsequently, the bankruptcy court learned from the Attorney Registration and Disciplinary Commission of the Supreme Court of Illinois ("ARDC") that the Appellant had been removed from the Master Roll of Attorneys on February 6, 2006. The bankruptcy court issued an order for the Appellant to appear and show cause why his admission pro hac vice should not be revoked, and why he should not be held in contempt ("Show Cause Order"). The Appellant filed a written response to the Show Cause Order in which he explained that he was unaware of the suspension of his Illinois law license prior to receiving the court's Show Cause Order. After receiving the Show Cause Order, the Appellant learned that he had been temporarily suspended for failure to pay the annual registration fee to the ARDC. The Appellant did not have a record of having received the invoice for payment of the fee, and asserted that the nonpayment was an unintentional oversight. Upon learning of the situation, and before the Show Cause Order hearing, Appellant paid the registration fee and, in accordance with the rules of the ARDC, was reinstated to the Master Roll of Attorneys.

On March 13, 2006, the bankruptcy court held a hearing on its Show Cause Order at which the Appellant testified on his own behalf to the information contained in his written response. Although the bankruptcy court found that the Appellant's failure to pay the fee was unintentional, it found that the Appellant had constructive notice that the annual fee was due. The court then found that "[Appellant]'s failure to inform this Court that he had allowed his status of good standing to lapse constituted a form of deceit upon the Court . . . . This Court finds it appropriate to hold [Appellant] in contempt of court and to impose a monetary sanction of Three Hundred Twelve and 50/100 Dollars ($312.50), which is to be paid withing ten (10) days of entry of this Order." (J.A. M, p. 3.) (footnote omitted.) (The bankruptcy court arrived at the $312.50 figure by multiplying the Appellant's hourly rate by the length of the February 9, 2006 hearing.) The Appellant then filed this timely appeal.

## IV.   DISCUSSION

### 1. Nature of Contempt Sanction - Civil or Criminal?

The threshold issue is whether the "monetary sanction" imposed by the bankruptcy court was in the nature of civil or criminal contempt. The nature of a contempt citation is derived from the totality of the circumstances. *In re Chandler*, 906 F.2d 248, 249 (6th Cir. 1990) (citing *In re Jaques*, 761 F.2d 302, 305 (6th Cir. 1985)). A contempt fine is civil if it either coerces one into compliance with a court order or compensates for a loss sustained. *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 829, 114 S. Ct. 2552, 2558 (1994). A contempt fine is criminal if "it is imposed retrospectively for a 'completed act of disobedience' . . . ." *Id*. at 828 (quoting *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 443, 31 S. Ct. 492, 498 (1911)). The purpose of a criminal contempt fine is to vindicate the authority of the court. *Gompers*, 221 U.S. at 443; *TWM Mfg. Co., Inc. v. Dura Corp.*, 722 F.2d 1261, 1270 n.8 (6th Cir. 1983). "A 'flat, unconditional fine' totaling even as little as $50 announced after a finding of contempt is criminal if the contemnor has no subsequent opportunity to reduce or avoid the fine through compliance." *Int'l Union*, 512 U.S. at 829 (quoting *Penfield Co. of Cal. v. SEC*, 330 U.S. 585, 588, 67 S. Ct. 918, 920 (1947)).

Although termed a "monetary sanction" by the bankruptcy court, the fine imposed upon the Appellant does not serve to compensate an aggrieved party or coerce the Appellant into compliance with an order of the court. The Appellant also had no opportunity to reduce or avoid the fine through

compliance. The fine was imposed solely for punitive purposes and to vindicate the authority of the court. Without question, the fine imposed was in the nature of criminal contempt.

### 2. Bankruptcy Court's Contempt Authority

A second issue is whether the bankruptcy court has the power to impose criminal sanctions. There is a split of authority among the circuits on this issue, and the Sixth Circuit Court of Appeals has not directly addressed the issue. Both the Fifth Circuit Court of Appeals and Ninth Circuit Court of Appeals have held that bankruptcy courts lack power to impose criminal sanctions. *Griffith v. Oles (In re Hipp, Inc.)*, 895 F.2d 1503, 1509 (5th Cir. 1990); *Placid Refining Co. v. Terrebonne Fuel & Lube, Inc. (In re Terrebonne Fuel & Lube, Inc.)*, 108 F.3d 609, 613 n.3 (5th Cir. 1997); *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1197 (9th Cir. 2003); *Price v. Lehtinen (In re Lehtinen)*, 332 B.R. 404, 412 (B.A.P. 9th Cir. 2005).

In *Hipp*, the Fifth Circuit held that the bankruptcy courts do not have the inherent contempt authority of Article III courts. *In re Hipp*, 895 F.2d at 1511. The court explained that the inherent contempt authority of Article III courts stems from the necessity of those courts to vindicate their authority without dependence on other branches of government. *Id.* at 1512-13. Because bankruptcy courts have immediate recourse to Article III courts to enforce compliance with their order, the court reasoned that they have somewhere else to turn without offending the principle of separation of powers. *Id.* at 1512 (citing *In re Omega Equip. Corp.*, 51 B.R. 569, 573 (D.D.C. 1985)). The court further noted that where Congress has intended non-Article III courts (for example, military and tax courts) to possess criminal contempt powers, it has statutorily granted such powers. *Id.* at 1513.

The Fifth Circuit next considered whether the bankruptcy courts had in fact been statutorily granted such powers by 11 U.S.C. § 105(a). In pertinent part, § 105(a) reads:

> The court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title . . . shall be construed to preclude the court from, sua sponte, taking any action . . . necessary or appropriate to enforce or implement court orders or rules . . . .

The Fifth Circuit concluded that § 105 does not grant bankruptcy courts power to punish criminal contempt because criminal contempt is not "necessary or appropriate to enforce or

implement" the courts' orders or rules. Rather, criminal contempt is intended to vindicate the authority of the court. *Id.* at 1515. The court similarly found no statutory grant of criminal contempt power in 28 U.S.C. § 157 because a criminal contempt proceeding is not a core proceeding, nor is it "related to" a case under title 11. To the contrary, a criminal contempt proceeding is separate and independent and can be prosecuted even after the underlying proceeding is terminated. *Id.* at 1517-18.

In *Dyer*, the Ninth Circuit held that 11 U.S.C. § 105(a) grants bankruptcy courts *civil* contempt authority, but, like the Fifth Circuit concluded that *criminal* contempt sanctions, unlike compensatory damages or attorney fees, are not "necessary" and are not authorized by § 105(a). *Id.* at 1193.[1] Acknowledging the debate among the circuits on this issue, the Ninth Circuit noted,

> Not only have the other circuits struggled with this question, so have the drafters of the Federal Rules of Bankruptcy Procedure. In 1987, the drafters passed Fed. R. Bankr.P. 9020, specifying contempt procedures in bankruptcy court, but noted that the rule might be inapplicable because 'bankruptcy judges may not have the power to punish for contempt.' Rule 9020 was repealed in 2001. Now, contempt motions are governed by Fed. R. Bankr.P. 9014 (a generic rule regarding all 'contested matters.'). The advisory notes explaining this change emphasize the conflicting authorities and state that '[i]ssues relating to the contempt power of bankruptcy judges are substantive and are left to statutory and judicial development, rather than procedural rules.'

*In re Dyer*, 322 F.3d at 1193 n.15.

Several other circuits have acknowledged the issue, but not reached a conclusion. The Eighth Circuit has held that bankruptcy courts are authorized, at least, to hear criminal contempt proceedings and make proposed findings of fact and conclusions of law for de novo review by the

---

[1] In dicta, however, the Ninth Circuit stated that "relatively mild" non-compensatory fines may be necessary under some circumstances and are therefore permissible under § 105(a). *Dyer*, 322 F.3d at 1193-94. The court discussed approvingly its prior decision in *Miranda v. S. Pac. Transp. Co.*, 710 F.2d 516, 520 (9th Cir. 1983), where it held that a court could impose a non-compensatory fine of $250 on an attorney in order to vindicate local rules. *Id.* at 1194 n.16. The court then went on to conclude that "when a bankruptcy court exercises the contempt authority of § 105(a), it may not impose *serious* punitive sanctions," *id.* at 1195 (emphasis added), despite its statement earlier in the opinion that "criminal contempt sanctions are not available under § 105(a)," *id.* at 1193, with no reference to the level of "seriousness" of the sanctions.

district court. The court did not, however, reach the question of whether a bankruptcy court can enter its own criminal contempt judgment, subject to review only by appeal.[2] *Brown v. Ramsay (In re Ragar)*, 3 F.3d 1174, 1177-79 (8th Cir. 1993); *see also Sosne v. Reinert & Dupree, P.C. (In re Just Brakes Corporate Sys., Inc.)*, 108 F.3d 881, 885 (8th Cir. 1997) (acknowledging "serious question" whether bankruptcy courts have contempt powers). Both the Second and the Seventh Circuit Courts of Appeals have also acknowledged that there is a serious question as to whether the bankruptcy courts are vested with criminal contempt power, but saved the resolution of the issue for another day. *United States v. Guariglia*, 962 F.2d 160, 163 (2d Cir. 1992); *Cox v. Zale Del., Inc.*, 239 F.3d 910, 916-17 (7th Cir. 2001).

Still other circuits have suggested in dicta, without the benefit of analysis, that the bankruptcy courts are vested with criminal contempt power. *Eck v. Dodge Chem. Co. (In re Power Recovery Sys., Inc.)*, 950 F.2d 798, 802 n.17 (1st Cir. 1991); *Graham v. United States (In re Graham)*, 981 F.2d 1135, 1142 (10th Cir. 1992) (citing former Bankruptcy Rule 9020 which was repealed in 2001).

While the Sixth Circuit Court of Appeals has not directly addressed this issue, it has favorably cited the Fifth Circuit's holding in *Hipp* that no implied grant of criminal contempt power exists where Congress had not explicitly granted it. *Rafoth v. Nat'l Union Fire Ins. Co. (In re Baker & Getty Fin. Serv., Inc.)*, 954 F.2d 1169, 1173-74 (6th Cir. 1992), *see also In re Lawrence*, 164 B.R. 73, 75-76 (W.D. Mich. 1993) (finding that, in *Baker,* the Sixth Circuit implicitly endorsed *Hipp,* and holding that bankruptcy courts do not have jurisdiction to conduct a criminal contempt hearing nor to enter an order finding criminal contempt). In *Baker*, the Sixth Circuit declined to imply that bankruptcy courts are authorized to conduct jury trials where the relevant statutes do not reveal any such congressional intent. *Id*. In addition, the dissent in *McClatchey v. Parsons (In re Lazy Acres Farm, Inc.)*, 134 F.3d 371, 1997 WL 809968 *5 n.1 (6th Cir. 1997) (Boggs, J., dissenting) (unpub. table) explicitly stated that "criminal contempt sanctions are beyond the power of the bankruptcy court . . . ."

---

**2** The Eighth Circuit specifically rejected the Fifth Circuit's reasoning in *Hipp* that criminal contempt is not "necessary or appropriate" to enforce the court's rules or orders. While the court acknowledged that criminal contempt judgments are intended to vindicate the authority of the court, it opined that criminal contempt judgments may be necessary or appropriate to enforce the order for whose violation it is imposed. *Ragar*, 3 F.3d at 1179.

The Sixth Circuit has acknowledged that courts must have the power to impose submission to their lawful mandates, and respect and decorum in their presence. *See In re Smothers*, 322 F.3d 438 (6th Cir. 2003). In *Smothers*, the court suggested penalties, other than criminal contempt, that may more appropriately fit conduct of attorneys that falls below the expected standards of members of the bar. For example, the court suggested a lecture from the court regarding the offending behavior, involving the offending attorney's office management or partnership, recommending to the appropriate bar association that the attorney be subject to disciplinary action such as a public reprimand, and public disciplinary postings on a page associated with the court's website listing the attorney's name, details of the misconduct, and the court's disapproval. *Id*. at 442-43. The Sixth Circuit appears to lean toward the position articulated by the Fifth Circuit in *Hipp*, i.e., the bankruptcy courts are without statutory authority to impose monetary sanctions for criminal contempt, and favors the imposition of non-monetary over monetary sanctions in appropriate circumstances.

### 3. Propriety of Bankruptcy Court's Contempt Finding

Were we to assume that bankruptcy courts have the power to impose criminal contempt sanctions, the bankruptcy court in this case abused its discretion in holding the Appellant in contempt. To be guilty of criminal contempt, the Appellant must have engaged in willful disobedience, which must be proved beyond a reasonable doubt. *TWM Mfg. Co.,* 722 F.2d at 1272 (citing *United States v. Powers*, 629 F.2d 619, 626 n. 6 (9th Cir. 1980)). Willfulness, in this context, "means a deliberate or intended violation, as distinguished from an accidental, inadvertent, or negligent violation. . . ." *Wright v. Nichols*, 80 F.3d 1248, 1251 (8th Cir. 1996) (quoting *Hubbard v. Fleet Mortgage Co.*, 810 F.2d 778, 781 (8th Cir. 1987)). Applying these standards, and viewing the evidence in the light most favorable to the court's finding, *TWM Mfg. Co.,* 722 F.2d at 1272 (citing *In re Joyce*, 506 F.2d 373, 376 (5th Cir. 1975)), there is insufficient evidence to find the Appellant guilty of criminal contempt. There is a complete absence of evidence that the Appellant deliberately failed to pay the registration fee, or failed to advise the bankruptcy court of the temporary suspension of his Illinois law license. All evidence and inferences lead to the conclusion that the failure to pay the registration fee, and the resulting participation in a hearing before the bankruptcy court while temporarily suspended, was inadvertent and accidental. The bankruptcy court itself found that "[the Appellant's] failure to pay the registration fee was not intentional . . . ."

(J.A. M, p. 2.) Therefore, the bankruptcy court abused its discretion in holding the Appellant in criminal contempt.

## V. CONCLUSION

Because the fine imposed was intended to vindicate the authority of the bankruptcy court, it was a criminal contempt sanction. There is a serious question whether the bankruptcy court has the power to impose such sanctions. Even assuming, for the sake of argument, that the bankruptcy court has such power, it abused its discretion in holding the Appellant in criminal contempt because there was no evidence of willful disobedience. The bankruptcy court's order is, therefore, REVERSED.