# United States Court of Appeals
## For the First Circuit

No. 08-1576

F.A.C., INC.
d/b/a FINANCIAL ADVISORS AND CONSULTANTS, INC.,

Plaintiff, Appellee,

v.

COOPERATIVA DE SEGUROS DE VIDA DE PUERTO RICO,

Defendant/Third-Party Plaintiff, Appellant,

GABRIEL DOLAGARAY; MARIA CRISTINA ORTIZ; JOSE A. BRULL;
ANDRES RODRIGUEZ; ARCILIO RIVAS; DANIEL SANTIAGO,

Defendants/Third-Party Plaintiffs,

INSURANCE COMPANY X,

Defendant,

v.

JOSE RAMON GONZALES; ANTONIO MARRERO; WILLIAM SORIA,

Third-Party Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Jaime Pieras, Jr., U.S. District Judge]

Before

Lynch, Chief Judge,
Leval* and Lipez, Circuit Judges.

---

* Of the Second Circuit, sitting by designation.

Alan I. Horowitz with whom Miller & Chevalier Chartered, Lydia M. Ramos Cruz, and Carlo Law Offices, P.S.C. were on brief for appellant.

Cherie K. Durand with whom Paul H. Hulsey, Reynaldo Quiñones, and Hulsey Litigation Group, LLC were on brief for appellee.

_____

April 9, 2009

_____

**LYNCH**, **Chief Judge**.  Pursuant to its inherent powers to issue sanctions for conduct undertaken in bad faith, the district court found one party to a settlement deserving of sanctions and ordered it to pay $469,000 in attorneys' fees and costs.  That party, Cooperativa de Seguros de Vida de Puerto Rico ("COSVI"), foolishly had filed a token opposition to the sanctions motion filed by its opponent, F.A.C., Inc. ("FAC").  Only when the court allowed sanctions did COSVI belatedly produce, on motion for reconsideration, evidence and argument that its conduct was a reasonable interpretation of its settlement obligations.  The district court, in our view, was justified in not giving weight to the belated evidence and argument that sanctions were inappropriate.

Still, the court could not issue a sanctions order unless FAC had met its burden of showing COSVI had "acted in bad faith, vexatiously, wantonly, or for oppressive reasons."  Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991) (quoting Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 258-59 (1975)).  The court was bound by this court's prior opinion in F.A.C., Inc. v. Cooperativa de Seguros de Vida de Puerto Rico (F.A.C. I), 449 F.3d 185 (1st Cir. 2006).

The court gave four reasons in support of its finding that COSVI acted in bad faith.  We find three of the four to have been erroneous, and need not reach the fourth.  First, the court

-3-

relied on COSVI's initial delay in writing a letter acknowledging fraud, which the district court found to be in violation of its obligations under an oral settlement agreement. However, as we held in F.A.C. I, it was unclear that the terms of the settlement included an obligation on COSVI to write such a letter. While we affirmed the district court's finding that such a letter was compelled by the settlement agreement, F.A.C. I, 449 F.3d at 192-93, our discussion of the question showed that the settlement terms were unclear on this point. Second, the district court concluded that COSVI "disobeyed" the court's order to write the letter. In fact, COSVI obtained a stay of the order pending appeal and wrote the letter promptly at the conclusion of its unsuccessful efforts to appeal. Nor was there a basis for the court's finding that five years of "protracted" litigation delays were attributable to COSVI's bad faith; the major part of this delay resulted from the lack of clarity of the unwritten terms of settlement, and most of the remainder of the delay resulted from COSVI's reasonable decision to appeal on a close question. We also hold that COSVI's appeal, which led to our earlier opinion in F.A.C. I, was not undertaken in bad faith and that there was prompt compliance with the district court's order once it was affirmed in the F.A.C. I appeal. These holdings undercut the primary bases for the sanctions award. We vacate and remand for further proceedings consistent with this opinion.

-4-

I.

The factual background of this case is described in F.A.C. I. Id. at 187-89. Briefly stated, FAC is a consulting firm that contracted with the Puerto Rico Department of Health to recover from a federal agency unreimbursed or under-reimbursed Medicare claims, in exchange for a percentage of the recovery. COSVI is a fiscal intermediary which evaluates Medicare claims on behalf of the Centers for Medicare and Medicaid Services ("CMS"), the federal agency ultimately responsible for payment. CMS is within the U.S. Department of Health and Human Services. On May 29, 1998, FAC sued COSVI and six of its officers under RICO, 18 U.S.C. § 1962(a), (d), and Puerto Rico law for allegedly attempting to extort funds in exchange for favorable action by COSVI on reimbursement requests FAC had made.

At issue in part was whether any fraud (alleged extortion demands by COSVI Assistant Vice President Andres Rodriguez) which occurred was the responsibility of COSVI. The parties orally settled the case on April 17, 2002, the third day of trial. They agree that the settlement obligated COSVI to write a letter to CMS in connection with FAC's reopening requests. The sanctions order stems from a disagreement, later raised, over what the letter was required to say. The language was important because CMS will not reopen claims older than three years unless "it is established that the determination or decision was procured by fraud or similar

fault of any party to the determination or decision." 42 C.F.R. § 405.1885(b)(3) (then codified at id. § 405.1885(d)).

COSVI sent a letter to CMS on May 24, 2002 that said, "[t]his request is based on facts learned by COSVI as a result of its litigation with FAC, Inc., and pursuant to 42 CFR Section 405.1885(d)." This was an oblique reference to the fraud language of the regulation. COSVI was interested in avoiding any admission that it had responsibility for fraud.[1] On June 20, 2002, CMS sent COSVI a letter stating that it refused to reopen the claims.

Starting in May 2002, FAC began to protest that COSVI was not meeting its obligations under the settlement agreement. FAC and COSVI each filed motions in the district court seeking enforcement of the settlement agreement in May and June 2002 respectively. FAC alleged that COSVI had not made the settlement payment to FAC as agreed and had not complied with other terms set forth in a post-settlement letter from FAC's counsel, while COSVI sought to compel FAC to dismiss claims it had brought in state court. COSVI wrote a second letter on July 19, 2002 that went no further in its admissions but again mentioned § 405.1885(d). That too did not procure reopening from CMS. On August 29, 2002, the

---

[1] At the outset of the trial, COSVI's own counsel admitted that COSVI's Assistant Vice President "Andres Rodriguez . . . is the gentleman who may have been involved in bribes, may have been involved in illegal activities[,] and I think the evidence will show it." COSVI's counsel, however, disclaimed any corporate responsibility for Rodriguez's fraud.

-6-

court entered an Amended Final Judgment, noting that it had "actively participated in the settlement discussions" and that it "understood the agreements reached" to include "[t]he sending of a letter by COSVI to [CMS], on behalf of FAC, Inc., requesting the reopening of the Medicare Part A reimbursement claims." The court's amended judgment also compelled FAC to dismiss the state lawsuit. No party appealed and the sums COSVI had deposited for the settlement were paid out.

In 2003, CMS apparently was given information about an FBI investigation into the kickbacks. In late 2003, FAC filed motions to reopen the case. See F.A.C. I, 449 F.3d at 189. FAC's argument was that the settlement required COSVI itself to reopen the claims and that the court should order COSVI to show cause why it had not done so. The court entered an order on September 28, 2004 denying all pending motions because it considered all claims disposed of due to the parties' settlement.

FAC filed a motion for reconsideration, arguing that COSVI was in breach of the settlement agreement because it had not fully informed CMS that fraud had occurred within COSVI.

On August 10, 2005, the court held that COSVI's May 2002 letter had failed to satisfy the settlement obligations because it was "silent on the reasons for the request for reopening." It ordered COSVI to send a new letter to CMS and required that letter to include the following sentence: "It has come to our attention

-7-

that fraudulent activities took place within our organization with regards to the claims at issue, and, pursuant to 42 CFR Section 405.1885(a) and (d), we request that you reopen and reassess the claims in question due to a finding of fraud or similar fault." This was the first time there was an order from the court that COSVI use specific language in its letter and that the language specifically admit there was fraud within COSVI. COSVI appealed, and was granted a stay of the district court's order pending appeal.

On May 1, 2006, this court affirmed the order in F.A.C. I. We first addressed the question of whether the district court had jurisdiction to enter the 2005 order and concluded that while the court's participation in the April 2002 settlement did not provide a basis for continuing jurisdiction, its August 2002 amended judgment, which incorporated the terms of the parties' agreement and demonstrated an intention to retain jurisdiction, did. F.A.C. I, 449 F.3d at 189-90 (citing Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 379-80 (1994)).

Turning to the merits of the order to COSVI, we held that some deference was due to the district court's views and "the district judge's assessment of COSVI's obligation is reasonable and more likely right than wrong." Id. at 194. We noted, however, that "FAC's case for its reading is hardly air tight," id. at 193, for several reasons. A "term sheet" that the parties had

-8-

circulated during settlement negotiations made no mention of a letter. Further, FAC did not protest after COSVI sent its initial letter, which FAC later said was inadequate. See id. COSVI filed a petition for certiorari seeking review of F.A.C. I, which the Supreme Court denied on December 4, 2006. 549 U.S. 1089.

Less than two weeks after the denial of certiorari, on December 15, COSVI sent a letter to CMS consisting entirely of the court-ordered language. CMS again declined to reopen the claims.

On July 5, 2006, after this court's opinion in F.A.C. I but before the denial of certiorari, FAC filed a motion for sanctions against COSVI in the district court. It claimed COSVI had acted in bad faith, misrepresented facts to the court, and unnecessarily protracted the litigation by refusing to send a letter complying with its settlement obligations, stonewalling FAC's attempts to have COSVI comply, and filing a time-consuming, unsuccessful appeal. FAC alleged that COSVI had done so to avoid admitting that it had been involved in fraud so that it could recover on an insurance policy that contained an exception for payments made as a result of fraudulent acts.[2]

---

[2] FAC alleged that COSVI had not informed the insurer of the settlement terms as it had represented to the court it had. It based this on the insurer's special appearance to request that the court authorize FAC to discuss the terms of the settlement. COSVI argues that it did inform its insurer of the settlement, that the admission of fraud was irrelevant to its insurance litigation, and that the fact that the insurer eventually paid COSVI showed this. We need not resolve this dispute because the primary grounds on which the district court relied do not support an award of

-9-

In response, COSVI filed a "Brief Response to Motion for Sanctions," which said only:

> FAC's July 5, 2006 motion for sanctions . . . fails on its face to advance any valid reason for the Court to impose sanctions on COSVI. Should the Court understand that COSVI is incorrect in its appreciation of the inadequacy of FAC's motion, it is respectfully requested that the Court grant COSVI ten days from notification of that fact to further respond to the motion.

The court did not hold a hearing on the motion.

On May 28, 2007, the court entered an order sanctioning COSVI under its inherent powers. It concluded that COSVI had "acted in bad faith, vexatiously and for oppressive reasons" because it

> failed to fulfill the terms of the April 2002 settlement, disobeyed a Court order to write a letter with "fraud or similar fault" language, misrepresented to Plaintiff and this Court that it exposed the terms of the settlement to [its insurer], and . . . unnecessarily protracted this litigation for five years after signing the April 2002 settlement agreement.

That order did not set the amount of the sanctions and instructed FAC to file a motion documenting its attorneys' fees and costs. FAC did so.

COSVI filed a motion for reconsideration which for the first time contained argument and evidence. COSVI filed a separate

---

sanctions and a remand is required.

reply to FAC's filing on the sum sought as sanctions. The court denied COSVI's motion for reconsideration on June 25, 2007.

The court entered an order setting the amount of the sanctions on March 25, 2008. The court awarded FAC its costs and attorneys' fees for the period between April 23, 2002, the date the court dismissed the case due to the settlement, and May 28, 2007, the date on which it ordered sanctions. FAC had requested approximately $670,000 in costs and attorneys' fees. The court, having considered COSVI's arguments that the amount sought was excessive, reduced the requested amount because it found some of the listed costs excessive and the requested rates for several of FAC's attorneys too high.

COSVI again moved unsuccessfully for reconsideration.

II.

We review a district court's grant of sanctions under its inherent power for abuse of discretion. Chambers, 501 U.S. at 55. We have vacated sanctions awards, nonetheless. See United States v. Figueroa-Arenas, 292 F.3d 276, 282 (1st Cir. 2002); Whitney Bros. Co. v. Sprafkin, 60 F.3d 8, 15 (1st Cir. 1995). "We . . . remain mindful that a 'district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.'" Whitney Bros., 60 F.3d at 12 (quoting Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405 (1990)).

-11-

A court may award sanctions upon finding that a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Chambers, 501 U.S. at 45-46 (quoting Alyeska Pipeline, 421 U.S. at 258-59). Because of its potency, "a court's inherent power to shift attorneys' fees 'should be used sparingly and reserved for egregious circumstances.'" Whitney Bros., 60 F.3d at 13 (quoting Jones v. Winnepesaukee Realty, 990 F.2d 1, 3 (1st Cir. 1993)). A district court exercising this power "must describe the bad faith conduct with 'sufficient specificity,' accompanied by a 'detailed explanation of the reasons justifying the award.'" Id. (quoting Gradmann & Holler GMBH v. Cont'l Lines, S.A., 679 F.2d 272, 274 (1st Cir. 1982)).

The district court acted within its discretion in considering only the facts that FAC had submitted with its motion for sanctions, given the insufficiency of COSVI's opposition. COSVI had the opportunity to present its own version of the facts before the court ruled on FAC's motion for sanctions, but it chose not to do so. See generally McCoy v. Mass. Inst. of Tech., 950 F.2d 13, 22 n.7 (1st Cir. 1991) ("Courts are entitled to expect represented parties to incorporate all relevant arguments in the papers that directly address a pending motion.").[3] However, the

---

[3] COSVI's argument that the court violated its due process rights by assessing sanctions without holding a hearing lacks merit. The court was required to provide "fair notice and an opportunity for a hearing on the record" before assessing sanctions. Roadway Express, Inc. v. Piper, 447 U.S. 752, 767

-12-

district court could not sanction COSVI unless the facts that it did consider supported a finding that COSVI had acted in bad faith, vexatiously, wantonly, or for oppressive reasons.

As said, the court gave four reasons in support of its finding of bad faith: 1) COSVI's failure to fulfill its obligations under the April 2002 settlement, 2) its disobedience of the court's order to write a letter acknowledging fraud, 3) the fact that it "unnecessarily protracted the litigation" for five years after making the settlement, and 4) its misrepresentation to FAC and to the court that it had disclosed the settlement to its insurer. The first three grounds are not supported by the record; we do not reach the fourth ground.

We turn first to the court's finding that COSVI had acted in bad faith by failing (until it finally did so in response to the court's order) to perform its obligation under the settlement agreement to write a letter to CMS explicitly acknowledging fraud. A review of our opinion in F.A.C. I demonstrates that it was unclear whether the 2002 settlement required that COSVI acknowledge fraud in its letter. There, we noted first that no testimony was provided about what the lawyers for either side or the principals had said in the original settlement negotiations. "Because the parties did not put their precise understanding in writing,

(1980); see also Jensen v. Phillips Screw Co., 546 F.3d 59, 64-65 (1st Cir. 2008). It did so. COSVI simply failed to take advantage of that opportunity.

-13-

anything done to reduce to precise language what was probably only a concept has to be an approximation." F.A.C. I, 449 F.3d at 194. The amended judgment entered in August 2002 by this same judge also reflected the parties' understanding, but that judgment by its terms required no admission from COSVI and no particular wording in the letter. FAC did not request the inclusion of language admitting fraud had occurred in any correspondence with COSVI until October 2004. We upheld the district court's 2005 interpretation of the April 2002 agreement as requiring a letter by COSVI expressly admitting fraud, but we did so largely in deference to the district court's fact finding relating to negotiations in which the district court had itself participated. We expressly noted that FAC's interpretation, which the district court adopted, was "hardly air tight," for the reasons stated earlier. Id. at 193. In view of the uncertainty whether the terms of the oral settlement agreement required such a letter, the fact of COSVI's failure to write the letter does not support the conclusion that COSVI was acting in bad faith.[4]

Second, there was no basis for the district court's finding that COSVI had disobeyed its 2005 order that it write the letter acknowledging fraud. Upon ordering that such a letter be

---

[4] While in F.A.C. I we ultimately upheld the district court's conclusion that a letter including language directly admitting fraud was required by the settlement agreement, we in no way intimated that COSVI's prior failure to write such a letter had evidenced bad faith.

-14-

written, the district court granted COSVI's motion to stay the order pending the appeal. Once COSVI's appeal from the order was final, COSVI promptly complied. The Supreme Court denied COSVI's petition for certiorari on December 4, 2006. COSVI notified the court of the denial on December 7 and sent the letter approximately one week later on December 15, 2006. The record shows that once COSVI's obligations were clear, it met them promptly.

Third, there was no basis for the district court's finding that COSVI was responsible for five years of inappropriate delay after making the settlement agreement. The first three years of delay following the settlement agreement, until the district court found that the agreement required such a letter and ordered that it be written (April 17, 2002 to August 10, 2005), resulted from a lack of clarity, documented in F.A.C. I, as to whether the terms of the unwritten agreement required such an acknowledgment. The next sixteen months were consumed by COSVI's altogether justified, although ultimately unsuccessful, appeal of a close question. Our F.A.C. I opinion makes clear that the appeal was not frivolous but presented reasonably controverted issues. Cf. Chambers, 501 U.S. at 40 (upholding award of sanctions based in part on party's filing of appeal found to be frivolous by appellate court). A district court's inherent power cannot include the power to sanction a party for reasonably taking an appeal. See Figueroa-Arenas, 292 F.3d at 280-81 (reversing entry of sanctions

-15-

against attorney where filing that formed basis of award was erroneous but not made in bad faith).

In conclusion, three of the four grounds that the district court cited as justification for its finding of bad faith fail.

We have reached no conclusion one way or the other whether the fourth ground cited has merit. The nature of our reasoning that no bad faith was shown on the other three grounds will require the district court to reevaluate its reliance on a supposed motive for the "bad faith." To the extent the question is not motivation for bad faith but an alleged misrepresentation that the settlement terms had been disclosed to the insurer, the issue arises of its relevance to FAC's motion for sanctions and whether any harm resulted to FAC. Nonetheless, even assuming the district court would reaffirm the fourth ground, it is by no means clear that the court would have imposed sanctions on that basis alone. We therefore vacate the sanctions and remand.

In the event that FAC continues to press its application for sanctions on remand, our ruling does not preclude the district court from reconsidering whether to grant sanctions on the basis of the fourth ground, and we imply no view one way or the other whether such an order could stand. We do not suggest by any means that COSVI's actions have been admirable, only that three of the

four grounds cited by the court as justification for sanctions cannot stand.

We vacate the entry of the sanctions award and remand for any further proceedings consistent with this opinion.[5]

---

[5] Although this case was initially filed under seal, the parties have consented to the public release of this opinion.

-17-